**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-6590**

RASHAAD TIWANIA JONES,

             Petitioner – Appellee,

       v.

HAROLD W. CLARKE, Director, Virginia Department of
Corrections,

             Respondent – Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk. Raymond A. Jackson, District
Judge. (2:13-cv-00001-RAJ-DEM)

Argued: January 29, 2015          Decided: April 22, 2015

Before WILKINSON, GREGORY, and SHEDD, Circuit Judges.

Vacated and remanded by published opinion. Judge Shedd wrote
the majority opinion, in which Judge Wilkinson joined. Judge
Gregory wrote a dissenting opinion.

**ARGUED:** Rosemary Virginia Bourne, OFFICE OF THE ATTORNEY GENERAL
OF VIRGINIA, Richmond, Virginia, for Appellant. Thomas Edward
Vanderbloemen, GALLIVAN, WHITE & BOYD, PA, Greenville, South
Carolina, for Appellee. **ON BRIEF:** Mark R. Herring, Attorney
General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond,
Virginia, for Appellant.

SHEDD, Circuit Judge:

Harold W. Clarke, Director of the Virginia Department of Corrections, appeals the federal habeas corpus order vacating Rashaad Tiwania Jones' state-court convictions and sentence. See Jones v. Clarke, 7 F.Supp.3d 626 (E.D.Va. 2014). For the following reasons, we vacate that portion of the order granting habeas relief and remand for dismissal of the petition.[1]

I

Jones waived his jury trial right, and a Virginia state judge convicted him on charges of grand larceny and breaking and entering. Both charges arose from the theft of a television from the home of Jereme Joseph. During trial, the Commonwealth presented two witnesses, Joseph and police investigator Karen Shuler. Jones did not testify or present evidence. The incriminating evidence against Jones was (and is) essentially unchallenged.

Joseph testified that in January 2010, while he was temporarily relocated from his Williamsburg, Virginia, house because it had flooded, someone broke a window in the back of the house and stole a television and other items from the bedroom. Approximately one month earlier, Jones had visited

---

[1] The district court denied relief on several claims, but Jones did not appeal, and those claims are not before us.

Joseph's house with a mutual friend. During that visit, Jones entered through the front door and remained in the family room.

After the theft occurred and Jones had been arrested, Jones called Joseph on the telephone. In response, Joseph visited Jones at jail and told him that his house had been broken into and the police knew he committed the crimes "because they had his fingerprints." J.A. 29. Joseph asked Jones why he did it, and Jones responded that "he made a mistake or whatever and that's what happened." J.A. 22; see also J.A. 29 (Jones "just said it happened basically like that").

Investigator Shuler testified that she investigated the break-in at Joseph's house. She determined that the thief entered the house through the broken window, and she lifted several fingerprints from the window area. During her testimony, the Commonwealth introduced into evidence a fingerprint analysis certificate that indicated one of the fingerprints belonged to Jones. Investigator Shuler did not analyze the fingerprint or prepare the certificate, but Jones' trial counsel did not object to the admission of the certificate or her testimony.

In her closing argument, Jones' trial counsel argued that the case was "highly circumstantial" and that the fingerprint was the only item that connected Jones to the crime. J.A. 42. The trial judge acknowledged that the fingerprint evidence, without more, was insufficient to convict Jones. However, the

judge explained that Jones' statement to Joseph that he made a mistake "is an admission of guilt that he admits that he was there, that he was involved in it." J.A. 43-44. Continuing, the judge stated that he suspected that other people may have also been involved in the crimes, but Jones "was certainly there and a participant." J.A. 44. The judge then noted that "when you take the fingerprint and combine it with the recent visit and you combine it with the statement," the evidence is sufficient to find Jones guilty beyond a reasonable doubt of breaking and entering and grand larceny. J.A. 44. Jones' counsel responded by arguing that Jones' "mistake" comment "could mean a number of things," J.A. 44, but the judge rejected her interpretation, stating: "my interpretation is the fact was he acknowledged that it was a mistake, that he participated in this. That's . . . a finding of fact. . . ." J.A. 44-45.

The trial judge sentenced Jones to two consecutive 15-year imprisonment terms but suspended 20 years, resulting in a 10-year sentence. The Virginia appellate courts denied Jones' direct appeal, and the state supreme court denied his state habeas petition.

Pursuant to 28 U.S.C. § 2254, Jones then filed this federal habeas petition. Pertinent to this appeal, the district court granted habeas relief on one claim. Specifically, the court concluded that the Supreme Court of Virginia unreasonably

4

applied Strickland v. Washington, 466 U.S. 668 (1984), in rejecting Jones' ineffective assistance of counsel claim. Generally speaking, the court determined that trial counsel's failure to object to the admission of the fingerprint evidence constituted deficient performance that prejudiced Jones. See generally Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009) (explaining Sixth Amendment confrontation right regarding laboratory analyst).[2] Accordingly, the court vacated Jones' convictions and sentence. We review the order granting habeas relief de novo. Richardson v. Branker, 668 F.3d 128, 138 (4th Cir. 2012).

## II

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). In Strickland, 466 U.S. at 687, the Court identified two necessary components of an ineffective assistance claim: "First, the defendant must show that counsel's

---

[2] Jones alleged several trial counsel errors in his ineffective assistance claim, but the district court focused on counsel's failure to object to the admission of the fingerprint evidence. See Jones, 7 F.Supp.3d at 632 ("It is therefore apparent to the Court that counsel's decision not to object was deficient performance under the first prong of Strickland.").

5

performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

The Supreme Court of Virginia adjudicated Jones' ineffective assistance claim on the merits. The court noted that Jones argued (1) the fingerprint evidence was inadmissible without the testimony of the fingerprint analyst, (2) an objection by his counsel to the admission of the fingerprint evidence would have been sustained, and (3) the remaining evidence against him would be insufficient to support the conviction. However, the court rejected this claim, finding that Jones "failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." J.A. 133-34.

Because the state supreme court adjudicated Jones' claim on the merits, a federal court may not grant habeas relief unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

6

States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This "is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011) (internal punctuation and citations omitted).

For purposes of this appeal, the "pivotal question is whether the state court's application of the Strickland standard was unreasonable." Harrington v. Richter, 562 U.S. 86, 101 (2011). Under § 2254(d), an unreasonable application of federal law differs from an incorrect application of federal law, and a state court "must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington, 562 U.S. at 101.

As noted, Strickland requires a defendant claiming ineffective assistance to establish two components: deficient performance and prejudice. However, the Strickland Court explained that "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that

7

course should be followed." 466 U.S. at 697. Consistent with this suggested approach, we will proceed directly to the prejudice component.

To establish prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. In the specific context of this case, Jones must establish there is a reasonable probability that, absent the alleged error, the trial judge "would have had a reasonable doubt respecting guilt." Id. at 695. Under Strickland, "[i]t is not enough for [Jones] to show that the errors had some conceivable effect on the outcome of the proceeding," id. at 693, and "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently," Harrington, 562 U.S. at 111. In short, "Strickland asks whether it is 'reasonably likely' the result would have been different," and the "likelihood of a different result must be substantial, not just conceivable." Id. at 111-12.

Because Jones was convicted by the trial judge in a bench trial, we are privy to the factfinder's view of the evidence

8

supporting his guilt. Based on the trial judge's comments, as well as our review of the evidence presented during trial, there are five main facts bearing on Jones' guilt: (1) Joseph's house window was broken; (2) the television was stolen from the house; (3) Jones visited the house a few weeks before the theft occurred; (4) Jones' fingerprint was lifted from the broken window area; and (5) Jones stated, in response to Joseph's question about why he committed the crime, that he "made a mistake or whatever and that's what happened." J.A. 22. The first two facts establish the corpus delicti of the charged crimes, and the other facts incriminate Jones.

Pointing to the trial judge's comments that the fingerprint evidence – when combined with other evidence – was sufficient to establish guilt, Jones argues that the fingerprint evidence was essential to the guilty verdict, and without that evidence, there is a reasonable probability that he would have been acquitted. The district court viewed the record in similar fashion. See Jones, 7 F.Supp.3d at 633-34. However, when the trial judge's comments about the fingerprint evidence are examined in context, it is clear that the judge was responding to Jones' trial counsel's argument that the fingerprint was the only evidence connecting Jones to the crimes. See J.A. 42-44. The trial judge merely listed the incriminating facts to rebut Jones' argument.

Having made that point, we readily acknowledge that the fingerprint evidence is strong evidence tending to establish Jones' guilt, and we do not doubt that the trial judge relied on that evidence to reach his verdict. However, the mere fact of the trial judge's reliance on that evidence does not establish Strickland prejudice. Rather, the determinative question for Strickland purposes is whether there is a reasonable probability that the trial judge would have had reasonable doubt respecting Jones' guilt if the fingerprint evidence had been excluded.

We believe the answer to that question is "no." The trial judge specifically found as a factual matter that Jones' jailhouse statement was an "admission of guilt." J.A. 43. This factual finding is "presumed to be correct." 28 U.S.C. § 2254(e)(1). Even if the fingerprint evidence is removed from the equation, the admission of guilt, in conjunction with the evidence establishing the corpus delicti and the evidence that Jones had recently visited Joseph's house, is sufficient to establish Jones' guilt of the charged crimes beyond a reasonable doubt. Although it is "conceivable" that the trial judge may have acquitted Jones without the fingerprint evidence, we do not believe that there is a "substantial" likelihood that the judge would have done so. More importantly, under these circumstances, and in light of our deferential standard of review, we cannot find that the state supreme court unreasonably concluded that

10

Jones failed to establish Strickland prejudice.[3] Therefore, the district court erred in granting the habeas petition.

### III

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. We hold that Jones has fallen well short of meeting this standard. Therefore, we vacate the portion of the habeas order granting relief, and we remand for the district court to dismiss the habeas petition.

VACATED AND REMANDED

---

[3] For analytical purposes only, we have assumed that a trial objection to admission of the fingerprint evidence would have resulted in its exclusion. However, that assumption is wholly speculative, as the Commonwealth could have requested an opportunity to procure the fingerprint analyst. Moreover, we note that Jones has not proffered any evidence to undermine the result of the fingerprint analysis.

GREGORY, Circuit Judge, dissenting:

In the summer of 2013, a television went missing from a temporarily unoccupied home where workers were repairing flood damage. Police investigated and lifted a number of fingerprints from a rear window and sliding glass door. One print from the window matched Rashaad Jones, an acquaintance of the home's occupant who had visited socially once before. The single print led to Jones's arrest and became the fulcrum of the government's case against him.

Despite fertile ground for investigation by defense counsel, Jones's attorney apparently did very little. The record is bereft of details regarding her pretrial investigation, apart from conclusory statements that such an investigation took place. At trial, counsel called no witnesses. She introduced no evidence. Her cross-examination of the two government witnesses was largely perfunctory. Her closing statement, read at a measured pace, lasted a little over a minute. And when presented with an opportunity to challenge the introduction of the central evidence in case – the fingerprint lifted from the rear window – she did not object on Confrontation Clause grounds, an objection that almost certainly would have been sustained.

It bears repeating that a functioning adversarial system requires actual adversaries, not placeholders. See United

12

States v. Cronic, 466 U.S. 648, 656 (1984) ("[T]he adversarial process protected by the Sixth Amendment requires that the accused have counsel acting the role of an advocate." (internal quotation marks omitted)). In this case, Jones's counsel not only refused to put up a fight. She went so far as to unnecessarily surrender the very Sixth Amendment right that helps animate the adversarial system – the right to confront one's accusers. Of course, defense counsel need not always object to the introduction of hearsay contained in a forensics certificate. There may be cases when not objecting is supported by sound trial strategy, such as when counsel does not want to draw additional attention to the evidence or provide the opportunity for another government witness to testify. This is not that case.

Nonetheless, the majority concludes that any deficient performance was not prejudicial because Jones admitted to the crime, and there was thus no reasonable probability of a different result if the fingerprint evidence was excluded. Such a conclusion, however, is at odds with the court's express rationale for a finding of guilt. As the trial judge reasoned: "I think when you take the fingerprint and combine it with the recent visit and you combine it with the statement I think that's sufficient beyond a reasonable doubt . . . ." J.A. 44 (emphasis added). In that light, there is a reasonable

13

probability that if the fingerprint evidence was excluded, Jones would have been acquitted.

I thus respectfully dissent.

## I.

A more fulsome description of the facts and proceedings in this case is helpful in evaluating the performance of Jones's counsel. As the majority notes, the government's case against Jones consisted of two witnesses. The first, Jereme Joseph, rented the home and owned the television set. He testified that he was living elsewhere while workers repaired the flood damage, and that his landlord received information from the workers that a window had been broken and that there may have been missing items. When Joseph reentered the house, he noticed that the workers had placed all of his belongings in one bedroom. A television set was missing. Valuable construction equipment, however, was undisturbed.

Joseph further testified that Jones was an acquaintance who had paid a social visit to the home a month before it flooded. After the police arrested Jones for the theft (on the basis of the fingerprint evidence), Joseph stated that he received "a phone call from [Jones] or whatever" and visited him in jail to have a conversation. J.A. 21. The pair engaged in a short and

14

enigmatic discussion lasting a "few seconds." J.A. 21. Asked what Jones told him, Joseph testified:

> Basically he made a mistake or whatever and that's what happened. I mean it really wasn't no explanation, it was dumb.

J.A. 22. Apparently unsatisfied, the trial judge later asked Joseph to elaborate on what Jones said, leading to this brief exchange:

**Joseph:** I mean he really didn't -- he just said it happened basically like that. Like there wasn't really -- what happened, happened, you know what I'm saying.

**The Court:** Did he say I'm sorry?

**Joseph:** Maybe he did.

**The Court:** Maybe he didn't?

**Joseph:** Right, I don't recall.

**The Court:** Well, he said it just happened?

**Joseph:** Right.

**The Court:** And that's all he said?

**Joseph:** Right.

J.A. 29-30.

The second witness was James City County police investigator Karen Shuler, who investigated the break-in at Joseph's house. Shuler's investigation determined that somebody had entered the home through a broken "rear window to the living room/dining room." J.A. 33. She also testified there was damage to the front door and sliding glass backdoor. The investigator lifted prints from the rear window and sliding

15

glass door, but did not submit the prints from the door for analysis.

During Shuler's testimony, the government introduced, and the court admitted, a forensic Certificate of Analysis ("the certificate") stating that a single fingerprint found on the rear window "matched" Jones. The other four prints did not return matches. The government did not call the analyst who prepared the report. Jones's counsel did not object to its admission on Confrontation Clause grounds. Regarding the fingerprints in general, Shuler testified:

**Shuler**: I could not say which one [print] was really good. I mean it looked - - by my visual it looked good but I can't testify - -

**Prosecutor**: You're not an expert to qualify those prints, correct?

**Shuler**: Right.

J.A. 35.

Jones's counsel called no witnesses and offered no evidence. She argued briefly in closing that the government's evidence was "highly circumstantial," observing that the television was never found in Jones's possession. Counsel also curiously characterized the fingerprint on the window as "damming" [sic], but maintained that such evidence alone was simply not enough to find Jones guilty beyond a reasonable doubt. J.A. 43.

16

The trial judge disagreed.  He found that the fingerprint certificate was enough to convict <u>when combined with</u> the evidence that Jones had been in the house previously, and the testimony about Jones's "admission" to Joseph while in jail. J.A. 44.  The court convicted Jones of breaking and entering, and grand larceny.  At the close of the guilt phase, the judge told Jones that "if [the victim] were to get his television back I suspect that would be a long way to ameliorating the situation" before sentencing.  J.A. 45.  The television was apparently not returned, and the judge sentenced Jones to 30 years imprisonment, with 20 years suspended.

The Court of Appeals of Virginia denied Jones's direct appeal.  The Supreme Court of Virginia did the same.  Jones then filed a state habeas petition in the Supreme Court of Virginia, arguing in part that his counsel was ineffective because she failed to conduct an adequate pretrial investigation into the fingerprint evidence, failed to call the forensics analyst to testify, and failed to object to the admission of the certificate on Confrontation Clause grounds.  The Virginia high court disagreed and concluded that Jones's claim did not satisfy either the "performance" or "prejudice" prong of the test for ineffective assistance of counsel established by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

17

In so holding, the Supreme Court of Virginia relied in part on an affidavit from Jones's trial counsel in which she explained the circumstances surrounding her decision not to question the fingerprint evidence. The relevant portion of the affidavit provided in full:

> Adequate pre-trial investigation was conducted and the undersigned had no reason to question the admissibility of the fingerprint evidence. Based on the police reports and discovery materials, counsel had reason to believe that the defendant's fingerprints would likely have been found on the scene due to his presence there on a different occasion. The undersigned is aware that counsel can require the prosecution to present at trial the testimony of the scientific expert who conducted the analysis, but the undersigned made the decision to not challenge the admission of the certificate of analysis since no basis existed for doing so and nothing appeared to be gained by challenging to [sic] admission of the certificate of analysis.

J.A. 87-88.

Jones then filed his federal habeas petition pursuant to 28 U.S.C. § 2254, arguing again that his counsel was ineffective because:

> (1) Counsel failed to conduct adequate pre-trial investigation as regards the admissibility of the fingerprint evidence;

> (2) Counsel failed to call as witness at trial the expert who conducted the fingerprint analysis; and

> (3) Counsel failed to object to the admission at trial of the certificate of analysis on the grounds that their admissions violated petitioner's rights under the Confrontation Clause of the Sixth Amendment . . . .

18

J.A. 114.

The district court granted relief, ordering that Jones's sentence and convictions be vacated. Jones v. Clarke, 7 F. Supp. 3d 626 (E.D. Va. 2014). The court first observed that under the United States Supreme Court's decision in Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), Jones could have successfully challenged the admissibility of the certificate as violating the Confrontation Clause because there was no in-court testimony of the expert analyst. Further, the court found it was unreasonable for Jones's trial counsel to base her decision not to challenge the evidence upon her belief that the fingerprint may have been from Jones's prior visit. The location of the print on the outside of a rear windowpane contradicted such an explanation, the court noted. Defense counsel's decision not to object could not be called strategic, the court further observed, insofar as there was "no apparent cost to objecting . . . and only a significant benefit to be gained." Jones, 7 F. Supp. 3d at 633. In that light, the court concluded that the state supreme court unreasonably applied Strickland when it held that counsel's performance was not objectively deficient.

As to the question whether the admission of the certificate prejudiced Jones, the district court determined that the fingerprint evidence was central to the state trial judge's

19

decision to convict. Thus, "had trial counsel been able to exclude or undermine the fingerprint analysis, it is likely to have had a significant impact on the likelihood of Petitioner's conviction." Id. at 634. The district court also rejected the government's argument that Jones could not prove prejudice because he had failed to demonstrate that the analyst was unavailable to testify, or would have been shown unreliable on the stand, had his counsel challenged the certificate's admission. The court observed that the government had failed to present any "evidence that the analyst would have been available or prepared to testify," and had even failed to say if it would have called the analyst had Jones's counsel objected. Id. In such circumstances, the court concluded that Jones did not bear the burden of actually proving the unreliability of the certificate, or establishing the whereabouts of the analyst. Imposing "[s]uch a high burden," the court reasoned, "contravenes Strickland" and "effectively 'convert[s] the prosecution's duty under the Confrontation Clause into the defendant's privilege under state law.'" Id. (quoting Melendez-Diaz, 557 U.S. at 324).

II.

The Sixth Amendment guarantees the right to effective counsel as a condition of a fair trial. Strickland, 466 U.S. at

20

684-86. To establish a claim of constitutional ineffectiveness, a defendant must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) that the "deficient performance prejudiced the defense." Id. at 687-88. Under the first prong, the adequacy of counsel's performance is measured by the circumstances of the litigation and prevailing professional norms. Id. at 688-89. Under the second prong, prejudice requires that there be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. As we have held, "[i]n cases where a conviction has been the result of a trial, the defendant must demonstrate that but for counsel's errors, there is a reasonable probability that he would not have been convicted." United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

As the majority recognizes, the merits of Jones's habeas petition pivot on the question of whether the state court's denial of relief involved an unreasonable application of those well-established standards.

### A.

Under Strickland's first prong, the question here is whether the Supreme Court of Virginia unreasonably applied the standard for deficient performance in concluding that Jones's

21

counsel performed adequately even though she failed to challenge the admission of the fingerprint evidence.

As the district court recognized, a forensics certificate of analysis is a testimonial statement that implicates the Confrontation Clause. Melendez-Diaz, 557 U.S. at 310-11. Such certificates are "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination." Id. (internal quotation marks omitted). As such, a defendant is entitled to confront the analyst who prepared the certificate at trial, unless the analyst was "unavailable to testify . . . and [a defendant] had a prior opportunity to cross-examine [him or her]." Id. at 311 (emphasis in original); see also Crawford v. Washington, 541 U.S. 36, 54 (2004).

In this case, Jones's counsel failed to object to the admission of the fingerprint certificate and never demanded that the government produce the analyst to testify.[1] Even the government appears to agree that had defense counsel objected, the objection almost surely would have been sustained on Confrontation Clause grounds. See Appellant's Br. 20. As such, Jones now argues that his counsel's performance was clearly

_____

[1] Virginia state law includes a specific pretrial procedure for criminal defendants to object to the admissibility of a certificate of analysis and require the testimony of the analyst. See Va. Code § 19.2-187.1.

22

deficient, and that the Supreme Court of Virginia unreasonably applied Strickland in finding otherwise. The government, however, contends that Jones's counsel was not required to object to the certificate's introduction given (1) counsel's affidavit stating that she could find no reason to question the validity of the results, (2) Jones's failure to demonstrate that the fingerprint certificate was somehow unreliable, and (3) the existence of other hypothesized strategic advantages of not objecting. Each of the government's arguments is considered in turn.

1.

Regarding counsel's letter affidavit, it is true that we owe a heavy deference to an attorney's informed, strategic choices. See Washington v. Murray, 4 F.3d 1285, 1288 (4th Cir. 1993) ("Strickland makes plain that a lawyer's performance will not be deemed deficient if it results from informed, strategic choices about how to mount a defense."). A "post hoc rationalization of counsel's conduct," however, is no substitute for "an accurate description" of what really occurred. Wiggins v. Smith, 539 U.S. 510, 526-27 (2003). Moreover, strategic decisions must nonetheless be reasonable in the first place to command a court's deference. See id. at 528 (quoting Strickland, 466 U.S. at 690-91).

Here, all that we know about counsel's relevant pretrial investigation and strategic deliberations is contained in a single paragraph in her letter affidavit. In the letter, counsel briefly asserted that she conducted an "[a]dequate pretrial investigation" that revealed no reason to question the reliability of the fingerprint evidence. Counsel appeared to base that conclusion on the fact that Jones's fingerprints should have naturally been at the scene because of his prior social visit there.

The government's reliance on the affidavit is unavailing for two reasons. First, as the district court observed, there is no reason why Jones would have left a single print on the outside of a rear windowpane during his previous social visit. At the very least, the record provides no such reason. Second, and more fundamental, Jones's counsel provided no actual details concerning her pretrial investigation – an investigation that Jones alleges was deficient. We thus have no way to say that any choices she made were informed, much less strategic. As the Supreme Court emphasized in Wiggins, "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 539 U.S. at

24

521-22.[2]  A conclusory assertion that an adequate investigation was conducted, without more, cannot entitle counsel to a presumption of reasonableness in these circumstances.  See id. at 527 (observing in a sentencing context that a "cursory investigation" does not "automatically justif[y] a tactical decision").  Indeed, attorneys have provided far more detail in other contexts where the sufficiency of their investigations has been challenged.  See, e.g., id. at 523 (describing a mitigation investigation conducted by counsel); Huffington v. Nuth, 140 F.3d 572, 579-80 (4th Cir. 1998) (deferring to defense counsel's tactical decision in light of detailed evidence regarding the deliberations animating the decision); United States v. Fulks, 683 F.3d 512, 518-19 (4th Cir. 2012) (finding defense counsel's tactics reasonable after counsel provided a specific and detailed explanation for his conduct – an explanation that the court found was consistent with the record as a whole).

---

[2] To determine the objective reasonableness of counsel's conduct, the Supreme Court has often referred to the American Bar Association (ABA) guidelines.  See Strickland, 466 U.S. at 688; Wiggins, 539 U.S. at 524.  The ABA's criminal guidelines specifically state that defense investigations should "include evaluation of the prosecution's evidence (including possible re-testing or re-evaluation of physical, forensic, and expert evidence) and consideration of inconsistencies, potential avenues of impeachment of prosecution witnesses, and other possible suspects and alternative theories that the evidence may raise."  ABA Criminal Justice Standards for the Defense Function 4-4.1(c) (4th ed. 2015) (approved and pending publication).

Here, the pressing need for a non-cursory pretrial investigation into the fingerprint evidence was confirmed by defense counsel's own assessment of the importance of the evidence. Counsel went so far as to argue in closing that the "one item" that connected Jones to the house was "a fingerprint" – a piece of evidence that she then called "damming" [sic]. J.A. 42-43. An attorney's choice not to challenge the admissibility of a piece of evidence can hardly be called strategic when the evidence is central to the government's case, there are clear grounds that would support a challenge, the challenge could yield immense benefit, and there is no articulated downside. Indeed, the district court's conclusion that counsel's decisionmaking was something less than strategic is also amply supported by the trial transcript as a whole, revealing a decided lack of thoroughness and zealous advocacy.

Even if counsel's affidavit were enough to establish that she adequately investigated the fingerprint evidence and believed it was reliable, it still does not support her decision not to challenge the evidence's admissibility. Just because key evidence may be reliable, a reasonable attorney should object to its admission when the objection will almost certainly be sustained. Here, the government sought to introduce a forensics certificate – reliable or not – without the testimony of the analyst. Yet counsel does not state any reasonable ground for

26

not objecting – such as knowledge that the analyst was available to testify and would have testified upon an objection. Counsel's decision thus cannot be called strategic even if she developed an informed belief that the evidence was facially trustworthy.

2.

The government also argues that Jones himself provided no evidence to the state court that "there was any factual basis to challenge the accuracy of the fingerprint analysis or that counsel failed to conduct a reasonable investigation." Thus, the argument follows, we cannot say that defense counsel was deficient for failing to challenge the certificate's admission. As the government maintains, mere speculation that Jones might have been able to undermine the fingerprint analysis had the analyst testified should not be sufficient to sustain a claim of deficiency under Strickland.

Such an argument fails for three reasons. First, as just discussed, the question of whether the evidence was reliable is independent from the question of whether it was admissible. Thus even if Jones indeed had no way to undermine the evidence, he certainly had a way to exclude it altogether.

Second, the government's argument improperly presumes that a certificate of analysis is reliable without the testimony of the analyst – shifting the burden onto a defendant to prove

27

unreliability. But as Crawford made clear, the right of confrontation is essential to establishing the reliability of evidence in the first place. 541 U.S. at 61. As the Supreme Court remarked:

> Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.

Id. The district court here thus correctly determined that Jones need not prove, without the benefit of confrontation, that the certificate was fatally unreliable.

Third, the government has failed to even state whether it would have called the analyst in the first place, or whether he/she would have been available. As discussed in greater detail below in the context of prejudice, a defendant certainly does not bear the burden of divining a fact that is entirely within the government's control. Here, Jones clearly established that a Confrontation Clause objection would have been successful if made, and the fingerprint evidence would have been excluded at the moment the objection was sustained. He need do no more. Whether or not the government could have pursued another route to admit the certificate – and whether the

28

attempt would have succeeded – amounts to speculation on this record.

3.

In the absence of actual strategic rationales articulated by Jones's counsel, the government hypothesizes various reasons why an attorney might not want to challenge a forensics certificate. For instance, a challenge could cause the government to put its forensics expert on the stand – an expert who could be highly persuasive and credible. Similarly, counsel may not wish to draw additional attention to unfavorable facts.

To be sure, assessing the objective reasonableness of a decision by counsel may require a court to "affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." Cullen v. Pinholster, 131 S.Ct. 1388, 1407 (2011) (internal quotation marks omitted). But we need not, and indeed should not, engage in such speculation when counsel has actually provided a statement of her reasoning, and the statement is devoid of valid strategic rationales. Nowhere in her letter does counsel identify any risks associated with objecting to the evidence. Instead, she merely states that there was nothing to be gained, apparently because she believed Jones's print should have been in the house given his prior social visit. On that dubious basis, counsel surrendered her client's right to confront his accuser and test the evidence

that was central to the government's case against him.  The government would now have the court ignore counsel's actual statement and instead engage in precisely the kind of after-the-fact rationalization that cannot displace a description of what actually occurred.  See Wiggins, 539 U.S. at 526-27.

As the Strickland Court itself observed, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  466 U.S. at 689.  We thus defer to the informed strategic judgment of counsel, even when that judgment proves unwise in retrospect.  We should not, however, afford the same deference on this record, where counsel's proffered justifications suggest that she did not make an informed strategic choice.

B.

Even if counsel performed deficiently, the majority holds that Jones fails to establish that the Supreme Court of Virginia unreasonably applied the prejudice prong of Strickland.  The majority argues succinctly that because Jones admitted guilt in his brief conversation with Joseph, and because he had been to the house previously, there is no reasonable probability that the exclusion of the fingerprint evidence would have made a

difference in his case.  Tellingly, nowhere does the government make the argument upon which the majority relies.  Instead, the government maintains that Jones cannot show prejudice because he has not established that the certificate would have actually been excluded in the end even if counsel had objected.  As the government conjectures, an objection may have simply caused the prosecution to call the analyst to the stand, thereby securing admission of the certificate.

1.

The majority's argument is belied by a stubborn fact, namely, the trial court's own statement as to why it concluded Jones was guilty beyond a reasonable doubt.  Looking at the totality of the evidence presented, the judge never indicated that any piece alone was enough to sustain a finding of guilt.  Instead, the court determined:  "I think when you take the fingerprint and combine it with the recent visit and you combine it with the statement I think that's sufficient beyond a reasonable doubt . . . ."  J.A. 44 (emphasis added).

In the face of that seemingly plain statement, the majority speculates, and it must be termed speculation, that there is no substantial likelihood that the judge would have acquitted Jones if the fingerprint evidence was excluded.  The majority's conclusion, however, ignores the centrality of that evidence to the government's case – a centrality illustrated by the

31

government's focus on the fingerprint during Shuler's testimony, defense counsel's closing argument that fixated on the print (calling it "damming" [sic]), and the court's express rationale for finding guilt. It also ignores the dubious nature of the "admission" itself. After Joseph testified on direct examination regarding his fleeting conversation with Jones – lasting a "few seconds" – the trial judge apparently was underwhelmed and felt the need to inquire in greater detail. After cross-examination, the court thus tried to elicit more concrete details about the jailhouse conversation. Instead of clarity, the court received largely the same answer, with an added dose of uncertainty regarding whether or not Jones apologized ("maybe he did"). The court then unambiguously based its finding of guilt not on the admission alone, but instead on the fingerprint evidence combined with Jones's statement and the fact of Jones's recent visit to the house.

"A defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland, 466 U.S. at 693. Instead, we look to whether counsel's error was "sufficient to undermine confidence in the outcome." Id. at 694. Without the fingerprint evidence, the government's case consisted of a missing television, a social visit Jones made to the home a month before, and the puzzling statement that Jones allegedly made to Joseph in jail.

32

Regardless of whether the court classified Jones's jailhouse statement as an "admission," it is clear from the record that that fingerprint evidence remained essential to the court's finding of guilt. Jones has thus met his burden to show prejudice.

2.

The government independently contends that Jones cannot show prejudice because he has not demonstrated that the forensics analyst was unavailable, or would have been unreliable, if defense counsel had objected to the evidence. The government's argument, however, fundamentally miscalibrates a habeas petitioner's burden in these circumstances. To demonstrate prejudice, Jones must show that counsel's objection to the evidence would have been successful, and that the exclusion of the objectionable evidence would have resulted in a reasonable probability of a different outcome. He need not surmount the additional burdens of establishing facts within the government's control, namely, whether the analyst would have been called and been available to testify. Indeed, the government has failed to even assert that it would have secured the analyst's testimony in the event of an objection. Shifting that burden onto Jones would not only exceed Strickland's requirements, it would also be in tension with Melendez-Diaz's admonition that the government is singularly responsible for

presenting its witnesses, even where defense counsel may be able to independently secure them. 557 U.S. at 324-25. As the Melendez-Diaz Court noted:

> More fundamentally, the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court. Its value to the defendant is not replaced by a system in which the prosecution presents its evidence via ex parte affidavits and waits for the defendant to subpoena the affiants if he chooses.

Id.

Nor need Jones divine what the analyst would have actually said if he/she had testified. As the Supreme Court emphasized in Davis v. Alaska, 415 U.S. 308 (1974), a defendant whose Confrontation Clause rights have been violated need not speculate about the hypothetical testimony or credibility of a key witness whom a petitioner could not effectively cross-examine. Id. at 317-18. As the Court further remarked regarding prejudice to a defendant, a deprivation of the right of effective cross-examination constitutes "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." Id. at 318.

I thus believe that Jones has established that the state supreme court unreasonably applied Strickland when it concluded that any deficient performance by his counsel did not prejudice him.

34

III.

In sum, I agree with the district court that habeas relief is required here, "where there is a clear error and where the record is equally clear that such an error made a difference." Jones, 7 F. Supp. 3d at 634. I would affirm the district court judge, and I therefore respectfully dissent.