**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-4801

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CARLTON N. LUCK, a/k/a C-4,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. Norman K. Moon, District Judge. (CR-04-47-NKM)

Submitted: September 14, 2006          Decided: September 22, 2006

Before WILLIAMS and SHEDD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Mary Lou Newberger, Federal Public Defender, Jonathan D. Byrne, Appellate Counsel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. John L. Brownlee, United States Attorney, Jean B. Hudson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM

Carlton N. Luck appeals his convictions and 444 month sentence for various drug and gun crimes. Luck argues that the district court erred at trial by admitting into evidence irrelevant and prejudicial photographs of Luck and other unidentified persons. Luck further contends that the district court erred at sentencing by not resolving one of Luck's objections before announcing his sentence and in imposing an unreasonable sentence. Because we find Luck's arguments unpersuasive, we affirm his convictions and sentence.

I.

In 2003, a multi-jurisdictional task force began investigating a Charlottesville narcotics trafficking gang. In the course of that investigation, the agents became interested in the narcotics distribution activities of a person known only as C4, who was later identified as Luck.

In March 2004, agents, with the help of confidential informant Artina Johnson, were able to negotiate two controlled purchases of crack cocaine from Luck. Johnson had made several phone calls to Luck to arrange the sale and on March 18, 2004, she went to Luck's home and purchased 2.873 grams of cocaine base from Luck. On March 24, 2004, Johnson executed a second controlled purchase when she

returned to Luck's home and purchased another 2.448 grams of cocaine base.

On April 29, 2004, the agents executed a search warrant at Luck's home, where they recovered various drug paraphernalia, the cell phone that Johnson called to arrange the drug transactions, and several photographs, including three Polaroids with writing in the margins that are the subject of this appeal. Luck was present at the search and was arrested.

On February 16, 2005, a federal grand jury returned a Superceding Indictment against Luck. Count One charged Luck with conspiracy to knowingly and intentionally distribute and possess with intent to distribute cocaine, marijuana, and fifty grams or more of cocaine base in violation of 21 U.S.C. § 846. Count Two charged Luck with knowingly brandishing a firearm during or in relation to a drug trafficking crime, in violation of 18 U.S.C. § 942(c)(1). Counts Three and Four charged Luck with knowingly distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Luck stood trial on the four-count indictment on March 22-23, 2005. During trial, the Government produced testimony from Johnson regarding her relationship with Luck, and detailing the two controlled purchases she made from Luck. Johnson testified that she first met Luck through her boyfriend, Jesse Thompkins, who regularly bought cocaine base from Luck.

Thompkins testified as a Government witness as well, explaining that he frequently bought cocaine base from Luck over the course of a year. Thompkins testified that Luck appeared at Thompkins's house one day to collect a debt. An argument ensued over the debt, culminating in Luck pointing a gun at both Thompkins and Thompkins's dog. Luck told Thompkins that he would shoot his dog if Luck did not receive his money. At that point, Johnson intervened and paid Luck $50 on Thompkins's behalf. Johnson stated that after she paid Luck, he pointed his gun at Thompkins's head and said, "I should f---ing kill you right now for your girl having to pay me something that you owe me." (J.A. at 258.)

Detective Brian O'Donnell of the Charlottesville police force testified about the investigation, the two controlled purchases, and the search of Luck's home. In the course of O'Donnell's testimony, the Government introduced several photographs that were seized during the search. One of the photographs showed three men, with the names "Bush," "Mike," and "C4" written across the top and the phrase "OPERATION CONSPIRACY" appearing at the bottom of the photograph. The second photograph showed four men, with the names "C4," "Divine," "Q," and "KP" written above and below the picture, and the words "WHO SAID WE NEED A LAWYER? WE HOLD S--T DOWN FOR REAL" written along the photograph's left side. The third photograph showed four men, with the phrase "Bownville mo$t wanted" and the names "JaBo," "C4," "Divine," "Wolf," and "Zeek" written in

4

the margins. Luck objected to the admission of the photographs on the ground that they were "all pictures from New York." (J.A. at 87.) The district court overruled the objection, finding that the pictures were "not that prejudicial." (J.A. at 87.)

On March 23, the jury returned a verdict of guilty on all counts. On April 29, 2005, Luck's Presentence Investigation Report (PSR) was prepared. The PSR labeled Luck a career offender with a criminal history category of VI, resulting in an advisory Guideline range on Counts One, Three, and Four of 360 months to life imprisonment. Luck's conviction on Count Two required the imposition of a statutory term of imprisonment of 84 months, to be served consecutively.

On July 28, 2005, the district court conducted Luck's sentencing hearing. Through counsel, Luck made a number of objections to the PSR, including the fact that two prior convictions that occurred approximately a year apart were counted as separate offenses as opposed to closely related and similar offenses. The district court rejected all of Luck's objections and ruled that the advisory Guideline range in the PSR was properly calculated. Luck then addressed the court in the form of his allocution. Luck made 18 additional objections during allocution, including an objection "to the criminal history information presented to the judge by the [Government] in their Title 21 U.S.C.

Section 851 motion, in order to sentence [me] as a career criminal offender." (J.A. at 401.)

At the conclusion of Luck's allocution, the district court imposed a sentence at the low end of the Guidelines of 444 months' imprisonment: 360 months for Counts One, Three, and Four, to be served concurrently, and 84 months on Count Two, to be served consecutively. Before the end of the hearing, Luck's counsel stated that he would like to adopt the objections made by Luck during his allocution so that they would be part of the record. He also stated his belief that he had previously made "most of those objections." (J.A. at 408.) The district court stated in response that any outstanding objections were overruled. Luck timely appealed, challenging both his convictions and sentence.

II.

Luck argues that the three photographs introduced into evidence by the Government were irrelevant to the charges against Luck and unduly prejudicial. We disagree.

"The district court's admission of these pictures cannot be disturbed absent a clear abuse of discretion." United States v. Analla, 975 F.2d 119, 126 (4th Cir. 1992). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.

6

Evid. 401. Irrelevant evidence is inadmissible, Fed. R. Evid. 402, and even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Moreover, relevant evidence should only be excluded under Rule 403 as unfairly prejudicial if there exists "a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." United States v. Williams, 445 F.3d 724, 730 (4th Cir. 2006) (internal quotation marks and alteration omitted).

The photographs at issue were relevant insofar as they matched images of Luck with his alias, C4. Thus, the pictures supported the testimony of Johnson, Det. O'Donnell, and Thompkins, who all referred to Luck and C4 as the same man. See, e.g., (J.A. at 60 ("We received a call back from an individual that we only knew as C4." (testimony of Det. O'Donnell)).)

We also cannot say that the district court abused its discretion in determining that any potential prejudice did not substantially outweigh the photographs' probative value. The photographs, on their face, were not overtly prejudicial to Luck. For example, neither Luck nor the men accompanying him are seen in the photographs possessing narcotics or firearms. Any possible prejudice to Luck would have to come from association with the other men in the photographs or the phrases -- "Operation

7

Conspiracy," "Who said we need a lawyer," and "Bownville Most Wanted" -- that were written on the photographs. The Government, however, did not attempt to link the phrases with the crimes charged. Instead, they used the photographs to link Luck to the alias C4. As to the other men in the photographs, Det. O'Donnell testified that he did not recognize any of the men, and the Government made no attempt to characterize the men as co-members with Luck in any criminal conspiracy. Accordingly, the district court did not err in allowing the photographs into evidence.

### III.

Luck next contends that the district court erred by not resolving Luck's objection to the use of prior convictions to increase his sentence before imposing his sentence. We find this argument without merit.

"A mere objection to the finding in the [PSR] is not sufficient." United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990). Instead, Luck had a "duty to make a showing that the information in the [PSR was] unreliable, and articulate the reasons why the facts contained therein [were] untrue or inaccurate." Id. Because Luck failed to explain why he was objecting to the criminal history information presented in the Government's § 851 motion, the district court was "free to adopt the findings of the [PSR] without more specific inquiry or explanation." Id. (internal quotation

8

marks omitted).  Moreover, Luck's counsel stated that he had previously made most of Luck's objections, and the district court stated at the conclusion of the hearing that he was overruling all outstanding objections.  Accordingly, the district court did not err in failing to explicitly reject Luck's objection made at allocution prior to announcing his sentence.

IV.

Luck's final contention is that his sentence of 360 months' imprisonment on Counts One, Three, and Four is unreasonable because it is greater than necessary to comply with the purposes of sentencing.  We disagree.

We review post-Booker sentencing decisions for reasonableness. United States v. Johnson, 445 F.3d 339, 341 (4th Cir. 2006).  In determining a sentence, district courts must still follow the commands of 18 U.S.C.A § 3553(a), determine the proper advisory Guidelines range, and take that range into account. United States v. Green, 436 F.3d 449, 456-57 (4th Cir. 2006).  That said, "a sentence within the proper advisory Guidelines range is presumptively reasonable."  Id. at 457 (internal quotation marks and alteration omitted).  "A defendant can only rebut the presumption by demonstrating that the sentence is unreasonable when measured against the § 3553(a) factors."  United States v. Montes-

9

Pineda, 445 F.3d 375, 379 (4th Cir. 2006) (internal quotation marks and alteration omitted).

Luck cannot show that his sentence, which was imposed at the low end of the Guidelines range, is unreasonable. There is nothing "minor" about an ongoing drug trafficking conspiracy and the use of firearms in furtherance of that conspiracy. When that conspiracy is viewed in light of Luck's extensive criminal history, it was certainly reasonable for the district court to conclude that a sentence of 360 months was sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in § 3553(a)(2).

V.

For the foregoing reasons, we affirm Luck's convictions and sentence.

AFFIRMED

10