**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-7367**

MAURICE SHAUNDELL HOPE,

       Petitioner – Appellant,

  v.

WARDEN CARTLEDGE,

       Respondent – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Greenville.  R. Bryan Harwell, District Judge.  (6:14-cv-03571-RBH)

Argued:  March 21, 2017                      Decided:  May 22, 2017

Before KING, SHEDD, and THACKER, Circuit Judges.

Affirmed by published opinion.  Judge Shedd wrote the opinion, in which Judge King joined.  Judge Thacker wrote a dissenting opinion.

**ARGUED:** Daniel Kazhdan, JONES DAY, Washington, D.C., for Appellant.  Alphonso Simon, Jr., OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellee.  **ON BRIEF:** Jennifer L. Swize, Yaakov M. Roth, JONES DAY, Washington, D.C., for Appellant.  Alan Wilson, Attorney General, John W. McIntosh, Chief Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellee.

SHEDD, Circuit Judge:

Maurice Hope appeals the denial of his habeas corpus petition. For the following reasons, we affirm.

I.

On January 1, 2008, between 6 a.m. and 7 a.m., a Bi-Lo grocery store located in Rock Hill, South Carolina, was robbed. Hope was arrested for this crime along with two co-conspirators, brothers Corey Spruell[1] and Jarrod Heath. Spruell and Heath pled guilty to charges related to the robbery, and Hope proceeded to trial on charges of kidnapping, armed robbery, conspiracy to commit armed robbery, and possession of a firearm during the commission of a violent crime.

At trial, the State presented the testimony of three Bi-Lo employees who were present at the time of the robbery. The employees testified that two men entered the store wearing ski masks and carrying handguns. One of the men held the employees at gunpoint while the other took the money from the bookkeeper's station. Because the robbers wore ski masks, the employees could not specifically identify them. However, they described the robber who held them at gunpoint as a black male of medium or stocky build, similar to Hope's physical characteristics.

Pursuant to plea deals, Spruell and Heath testified on behalf of the State. Spruell testified that he and Hope, with the help of Heath, robbed the Bi-Lo store. According

---

[1] The record is inconsistent as to the spelling of Spruell's name. We use "Corey Spruell" and not "Cory" or "Sprueill" because the parties did so in their briefs.

2

to Spruell, he entered the store with Hope while Heath remained in the car as the getaway driver, and he took the money from the bookkeeper's station while Hope held the employees at gunpoint. Heath then testified that he had overheard Spruell and Hope planning the robbery and agreed to drive them. Heath confirmed that Spruell and Hope entered the Bi-Lo with handguns and robbed the store while wearing ski masks. The State also presented evidence showing that Hope's wallet was found in the trunk of Heath's car when police searched it.[2]

A videotape of the robbery confirmed this general description of the events. Additionally, the State called a disinterested third party witness who testified that she saw a suspicious car containing a minimum of three individuals enter the Bi-Lo parking lot shortly before the robbery. The witness testified that she thought the car was a dark colored Dodge Stratus or Intrepid. The trial testimony indicates that these vehicles look very similar to the dark green Chrysler 300 driven by Heath. Thus, the videotape corroborates the testimony of what occurred inside the Bi-Lo, and the disinterested third party substantiates Spruell and Heath's testimony that three men participated in the robbery.

The defense called six witnesses, including Hope. One witness was Hope's girlfriend, and now wife, Christian, three witnesses were Hope's roommates, and one witness was a roommate's friend. According to the defense witnesses, Hope arrived at his house between 12 a.m. and 1 a.m. on January 1, 2008, for a party. Hope and the other

---

[2] The police searched Heath's car ten or eleven days after the robbery occurred.

witnesses testified that they stayed up talking until the sun came up, and during that time Hope never left the house. After the sun rose, at around 7 a.m., Hope and his girlfriend went to their bedroom. At about this time, Hope and his girlfriend accidentally broke their bed, and it took somewhere between 30-60 minutes to fix the bed. Thus, according to Hope and his alibi witnesses, Hope could not have robbed the Bi-Lo between 6 a.m. and 7 a.m. on January 1, 2008, because he was at home when the robbery occurred.

Hope also testified that he left the jurisdiction after being informed that he was wanted for armed robbery. Hope went to Detroit, Michigan, for four months and lived with a cousin. Hope was on probation at the time, and his travel to Detroit was a violation of his probation. He returned to South Carolina for his son's birthday, and the police found him hiding in a closet when they searched his house.

In the State's reply, a detective testified that he went to Hope's residence on January 11, 2008. He recalled that at least three of the alibi witnesses were present when he arrived, including Christian. Despite explaining that he was there to inquire about Hope's involvement in the robbery, the individuals did not advise the detective that Hope was at home with them on the morning of the robbery. Christian also failed to mention that Hope was with her on the morning of the robbery during any of the four to six subsequent phone conversations the detective had with her.

Hope's sole defense was the alibi testimony, and South Carolina law requires that an alibi charge be given under these circumstances. *See State v. Robbins*, 271 S.E.2d 319, 320 (S.C. 1980); *State v. Bealin*, 23 S.E.2d 746, 756 (S.C. 1943). Nevertheless, Hope's trial counsel failed to request an alibi instruction, and the court did not *sua sponte* provide

4

one. The jury found Hope guilty on all counts, and the court sentenced him to a 30-year imprisonment term.

Thereafter, the South Carolina Court of Appeals summarily dismissed Hope's direct appeal. Hope then filed an application for post-conviction relief ("PCR"), asserting claims of ineffective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984) (requiring proof of deficient performance and resulting prejudice to succeed on an ineffective assistance claim). Among other allegations, Hope argued that his trial counsel was ineffective for failing to request an alibi charge. After conducting a hearing, the PCR court denied his application, and the South Carolina Supreme Court summarily denied his petition for writ of certiorari.

Pursuant to 28 U.S.C. § 2254, Hope then filed this federal habeas petition reiterating his claim that his trial counsel was ineffective because he did not request an alibi instruction. The State moved for summary judgment arguing that Hope did not suffer prejudice from trial counsel's failure to request an alibi charge. The district court granted the motion and dismissed the habeas petition, finding no prejudice under *Strickland*. However, the district court granted a certificate of appealability on the question of whether Hope was prejudiced from the lack of an alibi instruction.

## II.

We review the district court's order denying habeas relief de novo. *Tucker v. Ozmint*, 350 F.3d 433, 438 (4th Cir. 2003) (citations omitted). Under the Antiterrorism and Effective Death Penalty Act of 1996, federal courts may not grant habeas relief in a § 2254 action unless the underlying state adjudication:

5

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This "is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

For purposes of this appeal, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter,* 562 U.S. 86, 101 (2011). "Under § 2254(d), an *unreasonable* application of federal law differs from an *incorrect* application of federal law, and a state court 'must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.'" *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir.), *cert. denied,* 136 S.Ct. 186 (2015) (quoting *Harrington,* 562 U.S. at 101). Because the South Carolina Supreme Court summarily denied Hope's petition for review, we directly review the PCR court's reasoning. *Brumfield v. Cain*, 135 S.Ct. 2269, 2276 (2015).

### III.

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). To prevail on an ineffective assistance claim, a defendant must establish two

6

elements: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

The PCR court determined that Hope's trial counsel's performance was deficient because he failed to request an alibi charge. However, the PCR court further concluded that Hope did not prove that he suffered prejudice from the lack of an alibi charge. Regarding the lack of prejudice, the PCR court explained that alibi testimony was presented to the jury, both attorneys discussed the alibi testimony in their closing arguments, the trial court repeatedly charged the jury that the State had the burden to prove each element of the charged crimes beyond a reasonable doubt and that Hope is presumed innocent, and the crucial issue was credibility because the jury could have believed either the State's witnesses or Hope's witnesses, but not both.

The parties accept for purposes of appeal that trial counsel's performance was deficient. Thus, we focus our inquiry on the prejudice prong of *Strickland*. When reviewing trial counsel's failure to request a jury instruction, "[o]ur inquiry regarding the prejudice prong is twofold: (1) whether the instruction, if requested, should have been given; and (2) if the instruction had been given, was there a reasonable probability that the outcome of the proceedings would have been different." *United States v. Luck*, 611 F.3d 183, 189 (4th Cir. 2010).

The first element is not in dispute. If requested, South Carolina law requires an alibi instruction to be given when the defendant claims that he was in another place at the time of the criminal act. *See Robbins*, 271 S.E.2d at 320.[3] Accordingly, the dispositive issue is whether there is a reasonable probability that the outcome of the proceedings would have been different had the alibi instruction been given to the jury. "A reasonable probability is probability sufficient to undermine confidence in the outcome." *Strickland*, 446 U.S. at 694. "*Strickland* asks whether it is 'reasonably likely' the result would have been different," and the "likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111–12 (citations omitted). In jurisdictions such as South Carolina, where a jury must return a unanimous verdict to convict, the prejudice prong of *Strickland* is met where "there is a reasonable probability that at least one juror would have struck a different balance." *Wiggins v. Smith*, 539 U.S. 510, 537 (2003).

Stated generally, Hope argues that he was prejudiced because the jury likely misunderstood the burden of proof surrounding an alibi defense. According to the PCR court, the sample South Carolina alibi instruction reads:

> The defendant in this case has raised a defense of alibi. That means the defendant was not at the scene of the crime at the time it was committed, but was elsewhere and had nothing to do with it. The word "alibi" means "elsewhere."

---

[3] Although required under South Carolina law, the South Carolina Supreme Court has previously denied applications for post-conviction relief based on ineffective assistance because the failure to request the alibi charge was not prejudicial. *See Ford v. State*, 442 S.E.2d 604 (S.C. 1994); *Gibbs v. State*, 744 S.E.2d 170 (S.C. 2013).

8

> There is no burden upon the defendant to prove that he was not at the scene of the crime. There is no burden upon the defendant to prove his alibi. The defendant need not prove he was somewhere else.
>
> The burden is on the State to prove beyond a reasonable doubt that the defendant was present at the scene of the crime, actually participated in the crime, and was not somewhere else. Thus, the State has the burden of proving beyond a reasonable doubt that the defendant was present and committed the crime. The State has the burden of disproving the defendant's alibi defense.

A521 n.6 (quoting Anderson, S.C. Requests to Charge - Criminal § 6-19 (2012)). Hope contends that this instruction was necessary for the jury to understand that it was the State's burden to disprove the alibi defense, not his burden to prove it. According to Hope, had the jury correctly understood this, there is a reasonable probability that the jury would have returned a different verdict. We disagree.

First, the trial court repeatedly instructed the jury, at least 15 times, that the State must prove Hope guilty beyond a reasonable doubt. Plainly, the jury could not have found Hope guilty of any offense if any juror did not believe beyond a reasonable doubt that he was present during the robbery. The trial court also clearly defined reasonable doubt and repeatedly stated that Hope was to be presumed innocent. Because the jury was fully aware the State bore the burden of proof on each element of each offense, it is inconceivable that the jury was misled on which party bore the burden of proof. *See Foster v. Ward*, 182 F.3d 1177, 1187 (10th Cir. 1999) (finding defendant suffered no prejudice under *Strickland* when the alibi instruction did not clearly allocate the burden of proof because "[t]he jury instructions . . . quite obviously and appropriately placed the burden on the prosecution to prove [defendant's] guilt beyond a reasonable doubt");

9

*Duckett v. Godinez*, 67 F.3d 734, 745–46 (9th Cir. 1995) (finding that the defendant was afforded a fair trial, even though his requested alibi instruction was not given, because the instructions as a whole clearly placed the burden of proof on the state).

Additionally, the crucial issue at trial was witness credibility, and the parties presented the jury with two different and irreconcilable factual scenarios. The State's version directly placed Hope at the scene of the crime and implicated him in the robbery. Hope's version directly placed him at home and absolved him of any involvement in the robbery. The parties' closing arguments discussed the witnesses' credibility, and the trial court specifically instructed the jury that it must judge credibility. The guilty verdict necessarily establishes that the jury found the State's witnesses to be credible and believed the State's version of events. We do not believe that the inclusion of an alibi instruction would have changed the jury's credibility determination or the ultimate verdict. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977) ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.").

Hope argues that the potential prejudicial impact of counsel's failure is amplified here because the record weakly supports the jury verdict. Specifically, Hope claims that Spruell and Heath's testimony, the only direct evidence of his involvement, is unreliable because they made conflicting statements to police, they testified pursuant to a plea bargain, and accomplice testimony is inherently suspect.[4] However, these arguments are

---

[4] Notably, Hope's alibi witnesses, who were his roommates, friends, and future wife, also have credibility issues. They failed to tell police about Hope's alibi when questioned on January 11, 2008, and their testimony may be less credible based on their
(Continued)

without merit because these credibility issues were presented directly to the jury. During closing argument, Hope's trial counsel specifically attacked the credibility of the State's witnesses for these very reasons. Nevertheless, the jury found Hope guilty beyond a reasonable doubt. *See United States v. Clark*, 541 F.2d 1016, 1018 (4th Cir. 1976) ("Although the testimony of an accomplice should be examined with care, . . . it is sufficient to sustain a conviction . . . if it convinces a jury of the defendant's guilt beyond a reasonable doubt."); *United States v. Hadaway*, 681 F.2d 214, 218 (4th Cir. 1982) ("[W]hile a defendant is always at liberty to cast aspersions on the testimony of a plea bargainer as unfairly favoring the government to provide a *quid pro quo* for the bargain, there is the countervailing consideration that self-exposure to a perjury charge is unlikely. The plea bargainer's position frequently makes him extremely reluctant to commit another crime or crimes and thus lay himself open to greater punishment.")

Moreover, in describing the State's case as "weak," Hope claims that "[a]part from the brothers' testimony, there is no meaningful evidence of [his] guilt." Appellant's Op. Br. 38. Contrary to this assertion, there is other meaningful evidence that supports the guilty verdict. Specifically, Hope's wallet was found in Heath's vehicle, and Hope left the jurisdiction for four months upon learning that he was wanted for armed robbery.

---

relationships with Hope. *See Coleman v. Lemke*, 739 F.3d 342, 352 (7th Cir. 2014) (The alibi witness' "relationship to [the defendant] suggests she had a motive to give evidence in [the defendant's] favor."); *Williams v. United States,* 452 F.3d 1009, 1013 (8th Cir. 2006) (noting the extent of the witness's personal relationship with the defendant should be considered in evaluating the credibility of the witness).

Flight from prosecution is evidence of guilt. *State v. Pagan*, 631 S.E.2d 262, 266 (S.C. 2006); *see also United States v. Obi,* 239 F.3d 662, 665 (4th Cir. 2001) (consciousness of guilt may be deduced from evidence of flight). In addition, the surveillance video and the testimony from the disinterested third party who saw a suspicious car containing three individuals corroborates Spruell and Heath's testimony.

Finally and most importantly, Hope has failed to demonstrate that the PCR court unreasonably applied federal law as defined by the Supreme Court.[5] At this stage in the proceedings, Hope must show "that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Simply put, the PCR court's decision is a reasonable application of *Strickland*. The decision properly applies the *Strickland* framework and is supported by the record.[6]

IV.

Hope has failed to meet his high burden of establishing that the PCR court unreasonably applied the *Strickland* standard or unreasonably concluded that Hope failed

---

[5] We also do not believe that the PCR court's decision is based on an unreasonable determination of the facts, as factual determinations made by the state court are rebuttable only by clear and convincing evidence. 28 U.S.C. § 2254(e).

[6] To be clear, we are not saying that alibi instructions are insignificant, and we acknowledge that the South Carolina Supreme Court and the Fourth Circuit have recognized the importance of these instructions. *See Roseboro v. State*, 454 S.E.2d 312, 313–14 (S.C. 1995); *United States v. Hicks*, 748 F.2d 854, 857–59 (4th Cir. 1984). We simply do not believe Hope has met his burden of showing he is entitled to habeas relief under the circumstances of this case for trial counsel's failure to request an alibi charge.

to establish *Strickland* prejudice. We therefore affirm the decision of the district court dismissing Hope's habeas petition.

*AFFIRMED*

THACKER, Circuit Judge, dissenting:

"Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law." *Carter v. Kentucky*, 450 U.S. 288, 302 (1981). In this case, South Carolina's alibi instruction would have educated the jurors that the State **was required to** disprove Maurice Hope's alibi defense in order to convict him. I believe there is a "reasonable probability" that the outcome of Hope's trial would have been different had counsel requested the instruction. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Therefore, I also believe the South Carolina post-conviction review ("PCR") court unreasonably applied *Strickland* in concluding to the contrary. *See* 28 U.S.C. § 2254(d)(1). I respectfully dissent.

## I.

For purposes of the prejudice prong of a Sixth Amendment ineffective assistance of counsel claim, a reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the trial. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694). We ask whether it is "'reasonably likely' the result would have been different"; that is, the "likelihood of a different result must be substantial, not just conceivable." *Harrington v. Ritcher*, 562 U.S. 86, 111–12 (2011) (quoting *Strickland*, 466 U.S. at 696).

## A.

The Supreme Court has established that, where a particular legal precept is sufficiently fundamental to the defendant's case in a criminal trial, a court may not

14

simply assume that jurors will intuit or deduce that precept from an incomplete or corollary instruction.

The Court has long emphasized that the government has the burden to prove "every fact necessary to constitute the crime with which he is charged," *In re Winship*, 397 U.S. 358, 364 (1970), and the accused shall not have the initial burden as to any of these facts, *see Sandstrom v. Montana*, 442 U.S. 510, 523 (1979) (noting the "overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime" (quoting *Morissette v. United States*, 342 U.S. 246, 275 (1952)). This principle is not simply a "trial ritual"; it is a "fundamental . . . substantive constitutional standard" that a factfinder is "require[d] [to] rationally apply . . . to the facts in evidence." *Jackson v. Virginia*, 443 U.S. 307, 316–17 (1979).

Following *Winship*, the Supreme Court recognized the importance of accurate, explicit, and complete jury instructions where laymen are required to understand the government's burden. In *Taylor v. Kentucky*, despite defense counsel's request, a state trial court refused to give an instruction on the presumption of innocence but did give an instruction on reasonable doubt. *See* 436 U.S. 478, 480–81 (1978). In reversing the defendant's robbery conviction, the Court noted, "While the legal scholar may understand that the presumption of innocence and the prosecution's burden of proof are logically similar, the ordinary citizen well may draw significant additional guidance from an instruction on the presumption of innocence." *Id.* at 484. Thus, even though one may be an "implied corollary" to the other, the presumption of innocence instruction "conveys for the jury a special and additional caution" and was therefore required to be given. *Id.*

15

at 485 (internal quotation marks omitted). Additionally, in *Carter v. Kentucky*, the Court held that a state trial judge has a constitutional obligation, upon counsel's request, to give an instruction that a defendant's desire not to testify "cannot be used as an inference of guilt and should not prejudice him in any way." 450 U.S. 288, 289 (1981) (internal quotation marks omitted). The Court explained, "Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law." *Id.* at 302. These decisions highlight the Court's dictate for accurate and plenary legal instruction, especially in the face of the legal complexities of presumptions and burdens of proof.

Against this backdrop, this court has found "constitutionally infirm" a jury instruction placing the burden of proving an alibi defense on the defendant. *Fulton v. Warden, Md. Penitentiary*, 744 F.2d 1026, 1031 (4th Cir. 1984) (citing *Winship*, 397 U.S. at 364); *see also Frye v. Procunier*, 746 F.2d 1011, 1013 (4th Cir. 1984) (Alibi is "not an affirmative defense since it negates every fact that the state is required to prove. Therefore no burden of persuasion could be placed upon the defendant to prove alibi to the jury's satisfaction.").

B.

Here, the trial court's jury instructions failed to give the jury a complete understanding of the State's burden. As the majority acknowledges, in defending himself, Hope's sole defense was an alibi defense. Per South Carolina law, the alibi instruction that the court would have given provides:

16

> The defendant in this case has raised a defense of alibi. That means the defendant was not at the scene of the crime at the time it was committed, but was elsewhere and had nothing to do with it. The word "alibi" means "elsewhere."
>
> There is no burden upon the defendant to prove that he was not at the scene of the crime. *There is no burden upon the defendant to prove his alibi.* The defendant need not prove he was somewhere else.
>
> The burden is on the State to prove beyond a reasonable doubt that the defendant was present at the scene of the crime, actually participated in the crime, and was not somewhere else. Thus, *the State has the burden of proving beyond a reasonable doubt that the defendant was present and committed the crime.* **The State has the burden of disproving the defendant's alibi defense.**

J.A. 521 n.6 (emphases supplied) (quoting Anderson, S.C. Requests to Charge - Criminal § 6-19 (2012));[1] *see also Roseboro v. State*, 454 S.E.2d 312, 313 (S.C. 1995) ("An alibi charge places no burden on a criminal defendant but emphasizes that it is the State's burden to prove the defendant was present and participated in the crime."). Significantly, South Carolina finds this instruction to be fundamental in alibi evidence cases. Indeed, per black letter South Carolina law, where the defendant presents evidence that he was at a different place at the time of the crime, the failure of trial counsel to request the alibi instruction is considered deficient representation, *see Ford v. State*, 442 S.E.2d 604, 606 (S.C. 1994), and the failure of a trial court to give it upon request, where the evidence supports such charge, is reversible error, *see State v. Burriss*, 513 S.E.2d 104, 108 (S.C.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

1999) ("[I]f any evidence exists to support a charge, it should be given."); *see also United States v. Hicks*, 748 F.2d 854, 857 (4th Cir. 1984).

To make matters worse, the trial court in this case strongly suggested that its instructions were the complete body of law to be applied. *See* J.A. 278–79 ("I'm the sole judge of the law in this case and you must take, accept, and apply the law as I charge it and I remind you this is true even if you think I charge the law in error or even if you think the law should be different. Your oath requires you to take, accept, and apply the law as I charge it."). In light of these remarks, "the absence of a charge on alibi" can give "rise to a conclusion by the jury that it was impermissible for them to consider alibi as a defense." *Riddle v. State*, 418 S.E.2d 308, 310 (S.C. 1992).

This court granted relief under § 2254(d)(1) in a similar situation based on an unreasonable application of *Strickland*. In *Lee v. Clark*, a state prisoner argued that counsel contravened *Strickland* by failing to request a heat of passion jury instruction at his state murder trial. *See* 781 F.3d 114, 116 (4th Cir. 2015). The trial court instructed the jury that second degree murder requires malice, and "[m]alice may result from any unlawful or unjustifiable motive including anger, hatred or revenge," or "may be inferred from any deliberate willful and cruel act against another, however sudden." *Id.* at 119. It also told the jury, "[If] the killing was committed while in the sudden heat of passion upon reasonable provocation," then the defendant would be guilty of the lesser offense of voluntary manslaughter. *Id.* (alterations and internal quotation marks omitted). However, counsel failed to request the Virginia pattern jury instruction explaining, "Heat of passion *excludes malice* when that heat of passion arises from provocation that

18

reasonably produces an emotional state of mind such as hot blood, rage, anger, resentment, terror or fear . . . ." *Id.* at 120 (emphasis supplied). Although Lee argued that he acted in the heat of passion from provocation, he was nonetheless convicted of second degree murder. *See id*. at 121.

We reversed the district court's denial of habeas relief, finding prejudice under the second prong of *Strickland.* We explained "the jury was given to understand anger, hatred or revenge as *exclusively* unlawful or unjustifiable motives," and was not instructed that "heat of passion and malice can arise from similar emotions." *Id.* at 126–27 (emphasis in original) (alteration and internal quotation marks omitted). Thus, because "the [state habeas] court failed to appreciate the prejudice inherent in the absence of" the proper jury instruction, it unreasonably applied *Strickland. Id.* at 116; *see also United States v. Luck*, 611 F.3d 183, 189–190 (4th Cir. 2010) (concluding that counsel's failure to request an informant instruction in drug conspiracy amounted to *Strickland* prejudice, even though the court gave a witness credibility instruction, because the "jury was not cautioned to consider the special problems of credibility posed by the government's paid informants," and "the [informant] instruction more effectively cautions the jurors to think closely about the testimony"). Like *Lee* and *Luck*, the incomplete and corollary instructions given at Hope's trial simply could not serve as a constitutional substitute.

The majority reasons, however, that because the trial court gave other instructions on the presumption of innocence, the State's burden to prove each element beyond a reasonable doubt, and the necessity of judging and weighing the credibility of the

19

witnesses, there is no resulting prejudice. It states, "Plainly, the jury could not have found Hope guilty of any offense if any juror did not believe beyond a reasonable doubt that he was present during the robbery." *Ante* at 9. This statement, while arguably true, assumes too much. Critically, what the jurors plainly did not know in this case was that the testimony of Hope's roommates, even if not proven beyond a reasonable doubt by Hope, "need only raise a reasonable doubt in their minds that [Hope] was present at the crime scene." *United States v. Alston*, 551 F.2d 315, 319 (D.C. Cir. 1976) (footnote omitted). In other words, even if the jury believed Hope's roommates with some degree of certainty, that belief *alone* could raise a reasonable doubt that he was at the scene of the crime. The instructions given by the trial court made absolutely no mention of how to weigh *those* competing concerns; therefore, the jurors did not know the State had to disprove Hope's alibi evidence, or that Hope did not have the burden of proving his whereabouts beyond a reasonable doubt. In my view, without proper guidance from the trial court, it is substantially unlikely that a jury would have intuited the appropriate way to assess this evidence.

## C.

Moreover, where a jury verdict is "only weakly supported by the record[, it] is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696. And where, like here, a trial is "essentially . . . a swearing contest" with "skeletal instructions" and the risk of "harmful inferences," there is a "heightened" risk that incomplete jury instructions will affect the outcome of a trial. *Taylor*, 436 U.S. at 487–88. I believe the State's record evidence in this case was

20

incredibly weak, and I disagree with the majority's representations to the contrary. *See ante* at 10–12.

The only State witnesses who positively identified Hope as committing the robbery were Corey Spruell and Jarrod Heath. They were hardly disinterested, honest witnesses; their testimony was riddled with material inconsistencies and traded for dismissed charges and lighter sentences. *See, e.g.*, J.A. 269 (State conceding at closing that Spruell "right up until the end denied having a gun. Obviously lied. He obviously lied about that. I don't know why."); *id.* at 133 (Heath admitted that he "change[d] [his] story" about whether or not Spruell had a gun); *id.* at 126 (Heath acknowledging he lied about the money he received for being the getaway driver); *id.* at 116–17 (Spruell acknowledging he is testifying pursuant to a plea bargain deal); *id.* at 125 (same for Heath).

Bi-Lo employees testified that two robbers, both with ski masks and guns, entered the store that morning. One of them jumped over the counter to retrieve money from the cash office, and the other held up the store manager and other employees with his gun. Both Heath and Spruell testified that Spruell was the one who jumped over the counter, and employees described the other suspect as anywhere from 180 to 200 pounds and 5'8" to 5'10" tall. Hope, however, was as much as 50 to 70 pounds heavier and six feet tall. In the end, the district court found "there was nobody at the grocery store (aside from Spruell and Heath) who could identify Petitioner as one of the robbers." J.A. 523 n.7 (alteration and internal citations omitted). There were no fingerprints, no DNA evidence, and no other corroborating witnesses for identification purposes. And, despite the

21

majority's reliance on the corroborative effect of the surveillance video, it fails to mention the video was inconclusive as to the *identity* of the robbers. *See ante* at 3. The PCR court found that the videotape "showed a person which very closely resembled [Hope]." J.A. 378. But it appears this statement was based on a representation made by PCR counsel that the video "showed a form of a person from behind that certainly would have matched Mr. Hope's build and description," but also "would . . . have matched many other people his size and shape." *Id.* at 359. Despite the lack of evidence directly supporting the PCR court's finding, the magistrate judge then took the unwarranted follow-on step of stating that the video "showed the petitioner (or an individual who, coincidentally, looked remarkably similar to the petitioner)." *Id.* at 491. Therefore, I would further conclude the PCR court made an unreasonable determination of fact on this point that was further exacerbated by the magistrate judge. *See* 28 U.S.C. § 2254(d)(2). Finally, the wallet found in Heath's car is of little probative value, as Hope was undisputedly in Heath's car a week before the robbery.

On the other hand, the testimony from Hope's roommates (who did not have an incentive to perjure themselves as did Spruell and Heath) painted a detailed and candid account of the morning of the robbery, and the majority's potential credibility concerns as to Hope's roommates only serves to underscore the importance of an alibi jury instruction. *See ante* at 10–11 n.4. The jurors did not understand that any discrepancies or ulterior motives gleaned from Hope's roommates' story should not render his defense an outright failure; rather, they were required to decide whether the State, in light of these discrepancies, *disproved* the testimony of the roommates beyond a reasonable doubt.

22

For these reasons, the PCR court "failed to appreciate the prejudice inherent in the absence of" the proper alibi jury instruction; therefore, it unreasonably applied *Strickland*, and Hope should be accorded relief under § 2254(d)(1). *Lee*, 781 F.3d at 116.[2]

## II.

When asked to describe a situation in which, on federal habeas review, *Strickland* prejudice could flow from counsel's failure to request an alibi defense, the State explained, "That would be in a situation where . . . the state's case is a weak case," Oral Argument at 31:07–31:27, *Hope v. Cartledge*, No. 15-7367, http://coop.ca4. uscourts.gov/OAarchive/mp3/15-7367-20170321.mp3 (4th Cir. March 21, 2017), and

> where . . . not having the [alibi] instruction would . . . have caused an issue for the jury in knowing what the state's burden was, and whether or not the defendant had a burden of showing anything in regards to the alibi.

*Id.* at 33:46–34:02. In my opinion, the State described precisely this case. Therefore, I respectfully dissent.

---

[2] The majority also cites *Gibbs v. State*, 744 S.E.2d 170 (S.C. 2013), and *Ford v. State*, 442 S.E.2d 604 (S.C. 1994), which held that defense counsel did not prejudice the defendant when they failed to request an alibi instruction. *See ante* at 8 n.3. First, however, in the § 2254(d)(1) context, state court decisions interpreting federal constitutional rights are not binding on us. *See Williams v. Taylor*, 529 U.S. 362, 409–10 (2000). In any event, these cases are distinguishable. In *Ford*, the alibi was contradicted by "overwhelming evidence," including DNA evidence, indicating the defendant was at the scene of the crime. *Ford*, 442 S.E.2d at 606. We do not have such overwhelming evidence here. In *Gibbs*, the jury received a lengthy identification charge, which repeatedly explained that the State had the burden to prove the "identity" of the criminal beyond a reasonable doubt. 744 S.E.2d at 176. We had no identification charge here.