J-S08030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAYMOND LEON DIAZ | : | |
| | : | |
| Appellant | : | No. 1133 MDA 2022 |

Appeal from the PCRA Order Entered August 3, 2022
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0002329-2017

BEFORE:    OLSON, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                **FILED: SEPTEMBER 1, 2023**

Raymond Leon Diaz (Appellant) appeals from the order entered in the Lackawanna County Court of Common Pleas, dismissing, following a hearing, his timely, first Post Conviction Relief Act[1] (PCRA) petition.  Appellant seeks relief from his jury convictions of multiple drug offenses and a firearms offense.  He avers the PCRA court erred in denying relief on the claims his trial counsel was ineffective for: (1) not requesting a jury instruction concerning the testimony of a confidential informant, who had received benefits from the Commonwealth in exchange for his testimony; (2) eliciting prejudicial testimony from a detective that Appellant's sister had threatened the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9545.

confidential informant; and (3) not exercising a peremptory challenge to exclude a juror who initially stated they could not follow the trial court's instructions. We affirm.

## I. Underlying Facts

Appellant's underlying convictions arose from two controlled drug buys conducted with a confidential informant, and the subsequent search of Appellant's home. We summarize the trial court's lengthy discussion of the trial evidence, which this Court quoted on direct appeal.[2]

In 2017, Karl Racavitch (the C.I.) was facing a possible parole violation,[3] and his "PO gave [him] two options[:]" incur the violation or work with Detective Harold Zech of the Lackawanna County District Attorney's Office as a confidential informant. N.T. Trial, 12/4/18, at 19. At trial, the C.I. testified he agreed to work with the detective and indeed, he did not incur a violation. *Id.* at 19, 22. In addition, Detective Zech gave the C.I. $200 to move, "as he feared Appellant due to having a shared history of drug-crime involvement." Trial Ct. Op., 8/22/19, at 4-5.

_____

[2] *See Commonwealth v. Diaz*, 662 MDA 2019 (unpub. memo. at 1-8) (Pa. Super. Feb. 24, 2020), *quoting* Trial Ct. Op., 8/22/19, at 3-12, *appeal denied*, 236 MAL 2020 (Pa. Sept. 18, 2020).

[3] At trial, the C.I. testified he was facing "a parole violation," but the Commonwealth referred to a "probation violation." N.T., 12/4/18, at 19, 22.

The C.I. informed Detective Zech that his neighbor, Appellant, was selling cocaine out of his home, which was on the first floor of a house in Scranton. The C.I. lived "behind" Appellant, and they shared a backyard area. The C.I. had been inside Appellant's home, with him, at least 20 times. *See* Trial Ct. Op., 8/22/19, at 5.

Two controlled drug buys were conducted on August 15 and 16, 2017. The C.I. testified at trial about both, which followed the same procedure. First, at the C.I.'s "home, in the presence of Detective Zech, [the C.I.] placed a call to Appellant seeking 'to purchase a ball of crack [ ] cocaine,' which would weigh approximately 3.5 grams." Trial Ct. Op., 8/22/19, at 5-6. Detective Zech thoroughly searched the C.I. and provided him with $220 to purchase the drugs. "About a minute and a half after placing the call[s]," the C.I. went to the rear porch of Appellant's home. *Id.* The C.I. entered the kitchen and talked with Appellant, then gave Appellant the $220, and Appellant left the kitchen and returned with a quantity of crack cocaine. *Id.* The C.I. did not encounter or hear anyone else in the home. *Id.* at 6. Finally, the C.I. returned to his home, gave the drugs to Detective Zech, and submitted to another thorough search. Detectives recorded the telephone calls on both days, and the Commonwealth played both for the jury.

The Commonwealth also called Detective Zech, who corroborated the C.I.'s account of the telephone calls and the searches before and after each drug buy. Detective Zech further stated he recorded the serial numbers of

- 3 -

the currency he provided the C.I. Trial Ct. Op., 8/22/19, at 7. Detective Zech "surveilled and photographed the C.I.'s trip[s] to Appellant's house from a second floor window in the C.I.'s home." *Id.* The Commonwealth admitted into evidence photographs of the C.I. being greeted at the doorway, and later being escorted out, by Appellant. *Id.* The two substances purchased by the C.I. were tested and determined to be, respectively, approximately three and 3.13 grams of cocaine. *Id.* at 9.

Detective Zech obtained a search warrant for Appellant's house, which law enforcement executed on the evening of the second controlled buy. "Surveillance detectives watched the residence . . . in anticipation of the search warrant and observed Appellant leaving" in his vehicle. Trial Ct. Op., 8/22/19, at 8. Detectives detained Appellant and found in his possession $1,945, which included some of the prerecorded money used in the controlled buys. *Id.* at 8. In his vehicle, detectives recovered a Samsung flip phone, which was identified as having the same number the C.I. called on both occasions. *See* N.T., 12/4/18, at 185-86. Appellant denied living on the first floor of the house, but claimed he lived on the second floor. *Id.* at 184.

> The search of Appellant's house produced:

> a black duffel bag containing [more than] 20 grams of cocaine[;] a Taurus 38 Special Revolver[;] sandwich baggies, generally used to package controlled substances[;] a safe containing sandwich baggies and other drug paraphernalia[;] a prescription bill bottle bearing Appellant's name[;] and [approximately 1.24 grams] of marijuana[.]

Trial Ct. Op., 8/22/19, at 8-9.

- 4 -

## II. Jury Trial, Sentencing & Direct Appeal

Appellant was charged with persons not to possess firearms[4] and numerous drug charges. The case proceeded to a jury trial on December 3, 2018. Appellant was represented by Michael Brier, Esquire (Trial Counsel).

Pertinent to this appeal, we summarize that during jury selection, Appellant moved to strike Juror #26 for cause, who had indicated they would not be able to follow the trial court's instructions. N.T., 12/3/18, at 49-50. The trial court denied the motion, reasoning the questionnaire can be "confusing" to potential jurors, and the court had properly "rehabilitate[d]" Juror #26. *Id.* at 13, 50. Trial Counsel subsequently used peremptory challenges to strike other jurors, and Juror 26 was eventually selected to sit on the jury. *See* N.T., 6/3/22, at 9.

The Commonwealth presented the evidence discussed above.

Additionally, we summarize that during cross-examination of Detective Zech, Trial Counsel asked about a criminal charge against Appellant's sister with respect to the C.I. N.T., 12/4/18, at 159. The detective responded he did initially charge the sister with retaliation against a witness, "for threats" made toward the C.I. *Id.* However, the charge was subsequently withdrawn, although it was "still a pending investigation." *Id.* at 160.

---

[4] 18 Pa.C.S. § 6105(a)(1).

Meanwhile, Appellant's defense theory was that he was merely present at the time of the drug transactions, and it was another male named Josh who sold the drugs to the C.I. Appellant's mother testified her sister (Appellant's aunt) lived in the first floor apartment with her "friend Josh and his two-year-old child."[5] Trial Ct. Op., 8/22/19, at 10. Appellant testified in his own defense to the following. He lived in North Philadelphia. On August 15 and 16, 2017, he was at Josh's apartment playing video games "when Josh asked him to let the C.I. in and out of the apartment." *Id.* at 11. Appellant denied having a telephone call with the C.I. — although he acknowledged the two recordings of the telephone calls were played — denied any knowledge about the flip phone recovered from his vehicle, and "denied having any 'buy money' comingled with the $1,945.00 recovered from his person." *Id.*; N.T., 12/4/18, at 205.

The Commonwealth recalled Detective Zech, who testified there was no evidence that a Josh, another male, or a minor child lived in the home. Trial Ct. Op., 8/22/19, at 11. Additionally, another detective, who was present during the search of the home, had testified "he did not encounter any other male or items belonging to any other male within the residence." *Id.* at 9.

---

[5] Appellant's mother also stated Appellant's sister lived in the second floor apartment. Trial Ct. Op., 8/22/19, at 10.

The jury found Appellant guilty of: (1) three counts of possession with intent to deliver a controlled substance;[6] (2) one count each of possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia;[7] and (3) two counts of criminal use of a communication facility.[8] The trial court then proceeded to the second phase of trial — the charge of persons not to possess firearms. The jury likewise found Appellant guilty of this count.

On February 28, 2019, the trial court imposed an aggregate sentence of 138 months to 280 months' incarceration (11½ to 23 years and 4 months).

Appellant took a direct appeal, on which this Court affirmed the judgment of sentence on February 24, 2020. The Pennsylvania Supreme Court denied his petition for allowance of appeal on September 18, 2020. ***Diaz***, 662 MDA 2019, *appeal denied*, 236 MAL 2020.

### III. PCRA Proceedings

On February 16, 2021, Appellant filed the underlying, timely PCRA petition *pro se*. The PCRA court appointed present counsel, Carl Poveromo, Esquire, who filed a supplemental PCRA petition on May 27th. Appellant

---

[6] 35 P.S. § 780-113(a)(30). These counts were identified as one count of possession with intent to deliver cocaine and two counts of delivery of cocaine. Trial Ct. Op., 8/22/19, at 11.

[7] 35 P.S. §780-113(a)(16), (31), (32).

[8] 18 Pa.C.S. § 7512(a).

raised, pertinently, claims that Trial Counsel was ineffective for: (1) not requesting a jury instruction that the C.I.'s testimony should be considered with great care and caution, because the C.I. received benefits from the Commonwealth in exchange for his testimony; (2) eliciting prejudicial and inadmissible testimony from Detective Zech that Appellant's sister had been charged in connection with threatening the C.I.; and (3) not exercising a peremptory challenge to exclude Juror #26.

The PCRA court conducted an evidentiary hearing on June 3, 2022, at which Trial Counsel and Appellant testified. The court denied the petition on August 3, 2022. Appellant took a timely appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

### IV. Statement of Questions Involved

Appellant presents three issues for our review:

1. Did the PCRA court err in failing to find Appellant was denied effective assistance of counsel when trial counsel failed to request an informant instruction, i.e., a jury instruction that the testimony of a confidential informant who had received benefits from the Commonwealth in exchange for testifying must be considered with great care and caution?

2. Did the PCRA court err in failing to find Appellant was denied effective assistance of counsel when trial counsel elicited prejudicial, and otherwise inadmissible, testimony from Detective Harold Zech regarding prior bad acts or wrongs committed by . . . Appellant's sister for his benefit, i.e., threatening the confidential informant for cooperating with law enforcement and testifying against Appellant?

3. Did the PCRA court err in failing to find Appellant was denied effective assistance of counsel when trial counsel failed to exercise a remaining peremptory challenge to exclude juror number 26

from the jury when the court denied trial counsel's motion to remove juror number 26 for cause on grounds the juror could not follow the court's instructions on the law?

Appellant's Brief at 4 (capitalization removed).

### V. Standard of Review & Law on Ineffectiveness Claims

We first consider the applicable standard of review:

[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

*Commonwealth v. Charleston*, 94 A.3d 1012, 1019 (Pa. Super. 2014)

(citation omitted).

A PCRA claim that counsel was ineffective

will be granted relief only when [the petitioner] proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2)(ii).

Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him.

[T]o prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails.

Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding

- 9 -

that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

* * *

[A petitioner] is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it 'could have reasonably had an adverse effect on the outcome of the proceedings.

**Charleston**, 94 A.3d at 1019 (paragraph breaks added), *citing*, *inter alia*, **Strickland v. Washington**, 466 U.S. 668 (1984); **Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987). With these principles in mind, we turn to Appellant's claims.

## VI. Jury Instruction on Confidential Informant's Testimony

In his main issue on appeal,[9] Appellant avers the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for failing to request a special informant jury instruction — that the C.I.'s testimony must be "considered with great care and caution" because he received benefits from the Commonwealth in exchange for his testimony. Appellant's Brief at 20.

---

[9] Appellant's discussion of this issue spans 16 pages, whereas his other two issues span, respectively, five and four pages.

Appellant maintains the C.I. "received immunity from prosecution for a probation violation and $200 to find another place to live." *Id.* at 21.

For ease of discussion, at this juncture we consider the following:

[W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. [I]t is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Charleston*, 94 A.3d at 1021-22 (citation omitted).

[A] trial court is not required to instruct the jury, verbatim, with all requested instructions, even if the substantive law within the proposed charge is without error. The trial court is merely required to explain clearly and accurately the law to the jury[.]

*Commonwealth v. Ogrod*, 839 A.2d 294, 331 (Pa. 2003) (citations omitted).

We now review Appellant's multiple arguments *seriatim*.

First, Appellant argues Trial Counsel should have requested Pennsylvania Suggested Standard Criminal Jury Instruction (Pa. SSJI (Crim)) § 4.06, which states:

You should examine closely and carefully and receive with caution the testimony of [witness] if you find that he or she . . . [*give specific situation*.]

*Subcommittee note*: This instruction may be appropriate when the court wishes to caution the jury about testimony that falls into a category subject to special scrutiny, e.g. . . . paid informer[.]

*See* Appellant's Brief at 21, 23, *quoting* Pa.SSJI (Crim.) § 4.06 & *note*.

The Commonwealth responds Appellant: (1) did not present, before the PCRA court, any argument concerning Pa. SSJI (Crim) § 4.06; and (2) indeed acknowledged the two instructions he was citing (discussed *infra*) were **not** a part of the Pennsylvania Standard Criminal Jury Instructions. Commonwealth's Brief at 8, *citing* N.T., 6/3/22, at 22. We agree Appellant did not preserve any argument concerning Pa.SSJI (Crim.) § 4.06, either in his PCRA petition or at the hearing, and thus it is waived on appeal. ***See*** Pa.R.A.P. 302(a); ***Commonwealth v. Bedell***, 954 A.2d 1209, 1216 (Pa. Super. 2008) (claims not raised in the PCRA court are waived and cannot be raised for the first time on appeal); Commonwealth's Brief at 8.

Second, Appellant argues Trial Counsel should have requested the following federal instructions: (1) the model "informant instruction" "in Devitt & Blackmar, *Federal Jury Practice and Instructions*" ("The testimony of an informer who provides evidence . . . for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. . . ."); and (2) Third Circuit Model Criminal Jury Instruction 4.20 (" . . . You have heard evidence that [witness] has an arrangement with the government under which [they were paid/received/'describe benefit'] for providing information[. . . . Y]ou should consider the testimony of [witness] with great care and caution. . . . It is for you to determine whether or not [witness]'s information or testimony may have influenced by (*his*) (*her*) arrangement with the

government." *Id.* at 21-22. Appellant claims the general instructions given by the trial court were "not sufficiently cautionary under the present circumstances." *Id.* at 31.

Appellant, however, omits from his argument the PCRA court's reasoning. At the PCRA hearing, Appellant's counsel asked Trial Counsel whether he was aware of the above two federal instructions. *See* N.T., 6/3/22, at 22-24. Both the Commonwealth and the PCRA court pointed out these instructions were not Pennsylvania law, to which defense counsel responded "[a]n instruction doesn't have to be a standard instruction." *See id.* at 23. The court, however, reasoned it would not have given any jury charge that was not a part of the Pennsylvania standard instructions. *Id.* Defense counsel again argued a trial court is not "bound to solely give Pennsylvania" instructions, but the court maintained, "I understand that, but that's been my practice[ to not give non-Pennsylvania instructions]." *Id.* at 23-24.

Furthermore, the PCRA court reasoned in its opinion that the general instruction given "covered the matter of witness credibility, so a specific instruction was unnecessary." PCRA Ct. Op., 10/7/22, at 8. We reiterate that at trial, the C.I. clearly acknowledged he had agreed to work as a confidential informant in order to avoid a parole violation, in fact he was not found in violation, and Detective Zech gave him $200 to move, as the C.I. was afraid

of Appellant due to prior criminal involvement with him. *See* Trial Ct. Op., 8/22/19, at 4-5; N.T., 12/4/18, at 22.

The trial court charged the jury in pertinent part as follows:

I'm now going to instruct you on how you may evaluate and weigh the evidence. . . . [Y]ou should decide which witnesses to believe and which evidence to accept on the basis of whether or not the testimony or evidence is believable.

\* \* \*

. . . As the judges of the facts, you are the sole judges of the credibility of the witnesses and their testimony. This means you must judge the truthfulness and accuracy of each witness's testimony and decide whether to believe all or part of none of that testimony.

The following are some of the factors that you may consider when judging credibility in deciding whether or not to believe testimony. . . .

\* \* \*

. . . Did the witness have any interest in the outcome of the case? Did the witness have a motive or bias to testify? . . .

\* \* \*

. . . You should consider whether the witnesses appear to be biased or unbiased, whether they are interested or disinterested persons. And you should consider all other factors which go to the reliability of their testimony.

N.T., 12/5/18, at 34-36, 38.

The PCRA court reasoned that after review of the jury charges a whole, rather than "isolated excerpts," Trial Counsel was not ineffective for not requesting a specialized informant instruction. PCRA Ct. Op., 10/7/22, at 8. We agree; after review of the instructions as a whole, the trial court "clearly,

adequately, and accurately" explained the law as to how the jury could review the C.I.'s testimony. **See Charleston**, 94 A.3d at 1021-22. Accordingly, Appellant has not shown his underlying claim has arguable merit. **See id.** at 1019.

Next, Appellant also claims he was prejudiced because there is a reasonable probability the outcome of his trial would have been different. Appellant's Brief at 33. We disagree, as there was other evidence, aside from the C.I.'s testimony, establishing his guilt. Appellant ignores the evidence that a flip phone, having the same number the C.I. called to arrange the drug buys, was recovered from his vehicle, and some of the prerecorded money was found on his person when he was detained the same evening as the second drug transaction. Importantly, the jury heard recordings of the two telephone calls between Appellant and the C.I. — and the jury heard Appellant's voice at trial when he testified. Although Appellant denied having any knowledge of the phone, denied any drug-buy money was on his person, and denied he participated in the telephone calls, the jury was free to believe all, part, or none of any of the trial evidence. **See Commonwealth v. Gonzalez**, 109 A.3d 711, 723 (Pa. Super. 2015) ("The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses."); **Commonwealth v. Perez**, 103 A.3d 344, 351-52 (Pa. Super. 2014) (even if a "no-adverse-inference [jury] instruction" was given, there was no realistic

likelihood the jury would have reached a not-guilty verdict, given the "compelling evidence" of defendant's guilt). For the foregoing reasons, we conclude no relief is due.

We briefly consider Appellant's additional arguments. He relies on the Fourth Circuit Court of Appeals' decision in *United States v. Luck*, 611 F.3d 183 (4th Cir. 2010), that the defendant was prejudiced by his attorney's failure to request an informant instruction. Appellant's Brief at 24-29. Appellant contends that like *Luck*, which "was built entirely on a foundation of paid informant testimony[ and included] minimal physical evidence," here, the C.I.'s "testimony was uncorroborated to any meaningful degree[,]" the police did not observe the actual hand-to-hand transaction, and there was no camera, body recorder, or fingerprint evidence. *Id.* at 28-29. We disagree.

Preliminarily, as Appellant concedes, the federal court's decision is not binding on this Court. *See Century Indem. Co. v. OneBeacon Ins. Co.*, 173 A.3d 784, 792 n.14 (Pa. Super. 2017) (federal Circuit Court decisions are not binding on this Court, although they may provide persuasive authority if neither this Court nor the Pennsylvania Supreme Court has considered the pertinent issue); Appellant's Brief at 29. In any event, we would determine the circumstances in *Luck* — that the prosecution's "case was built **entirely** on a foundation of paid informant testimony[ and t]here was minimal physical evidence" — is distinguishable. *See Luck*, 611 F.3d at 190 (emphasis added). We disagree with Appellant's characterization that here, the C.I.'s "testimony

- 16 -

was uncorroborated to any meaningful degree." *See* Appellant's Brief at 29. As discussed above, the Commonwealth played the two audio recordings of the telephone conversations and presented evidence about the recovery of the flip phone, as well as the prerecorded buy-money from Appellant's person.

Appellant also cites *Ogrod*, 839 A.2d 294, and *Commonwealth v. Rizzuto*, 777 A.2d 1069 (Pa. 2001), in which the Pennsylvania Supreme Court held defense counsel was not ineffective for, respectively, "allowing a fellow inmate . . . to testify using an alias" and "failing to object to prejudicial remarks from a prosecution witness." *See* Appellant's Brief at 23. First, we observe neither of these circumstances are present in the case *sub judice*. Nevertheless, in both decisions, the Court considered defense counsel had requested jury instructions regarding the credibility of an informant, and thus found, respectively, no trial court error and no ineffective assistance by counsel. *See Ogrod*, 839 A.2d at 331-32; *Rizzuto*, 777 A.2d at 1085. From these holdings, Appellant extrapolates that our "Supreme Court tacitly approved of an informant instruction in each case[.]" Appellant's Brief at 24. In light of all the foregoing discussion, we disagree that *Ogrod* or *Rizzuto* support relief in this appeal.

## VII. Detective's Testimony on Charges Against Appellant's Sister

In his second issue, Appellant asserts the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for eliciting Detective Zech's testimony about Appellant's sister's "prior bad act[ ]" — threatening

the C.I. Appellant's Brief at 35. Appellant contends this testimony was not relevant and "had no connection" to his charges, was unduly prejudicial, and would have otherwise been inadmissible. *Id.* at 37. He reasons that although there was no evidence his sister acted at his behest, Detective Zech's testimony "served no purpose other than to link [him] to his sister's criminal behavior and cause the jury to . . . infer" he was guilty. *Id.* Appellant argues Detective Zech's testimony "opened the door to even more damaging testimony" — that the investigation against Appellant's sister was still ongoing. *Id.* at 36-37. For the same reasons, and on the ground "[n]othing was gained by" this questioning, Appellant claims he suffered prejudice. *Id.* at 39. Next, Appellant contends Trial Counsel's explanation for eliciting the testimony — to show the detective was "overly aggressive" and "not looking at" the potential that someone else was in the apartment selling drugs — was "unreasonable" and "cannot pass scrutiny." *Id.* at 38-39. Appellant concludes a new trial is warranted. We conclude no relief is due.

We review the pertinent testimony by Detective Zech in its full context. Trial Counsel asked the detective if he charged Appellant's sister in connection with the C.I. N.T., 12/4/18, at 159. Detective Zech responded he did charge her with retaliation against a witness, "for threats that were made towards" the C.I. *Id.* The C.I. provided a written statement that Appellant's sister, who was driving a white Chevy Impala, "was threatening him" at the elementary school where the C.I. took his daughter to school. *Id.* at 160.

Detective Zech obtained "a warrant," reviewed the surveillance footage, but "did not see anything of the sort" or see "them meet with one another." ***Id.*** The detective thus withdrew the charge, but stated "it's still a pending investigation, **and it has nothing to do with [Appellant's] matter**[.]" ***Id.*** (emphasis added). Trial Counsel asked Detective Zech if he filed the charge in order "to put pressure on" Appellant. N.T., 12/4/18, at 159. The detective responded: "Absolutely not. That's absurd. I have a main objective to protect my informants." ***Id.***

The above testimony does not support Appellant's present theory that the jury was led to infer he was guilty, to such an extent that the outcome of his trial would have been different. ***See*** Appellant's Brief at 35. In addition to Detective Zech's above statement, that the charge against Appellant's sister "has nothing to do with" Appellant's case, the detective further clearly testified, "It has nothing to do with the drug charges that are against [Appellant]. It's a completely separate investigation. And it certainly was not to put pressure on" Appellant. ***See*** N.T., 12/4/18, at 160, 162. As stated above, the jury was free to believe all, part, or none of this testimony by Detective Zech. ***See Gonzalez***, 109 A.3d at 723. We also reiterate there was other, unrelated evidence to support the jury's guilty verdicts: the audio recordings of the two phone calls between Appellant and the C.I., and the recovery of some of the prerecorded buy money on Appellant's person, as well

as the flip phone from his vehicle. In light of the foregoing, we conclude the PCRA court did not abuse its discretion in denying relief on this issue.[10]

## VIII. Peremptory Strike of Juror #26

In his final issue, Appellant alleges the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for failing to use "a remaining peremptory challenge to strike" Juror #26. Appellant's Brief at 40. He states that Juror #26 had indicated they could not follow the trial court's instructions. *Id.* at 40. Although Trial Counsel moved to remove this juror, the trial court questioned them and determined, "[T]hose questions are sometimes confusing[,] and I believe I properly instructed the [jurors] as to what the law is and what they must follow, and everybody indicated appropriately."[11] *Id.*

---

[10] We note the PCRA court reasoned: (1) Trial Counsel's line of questioning "was not intended to prejudice . . . Appellant but rather was meant to bolster the C.I.'s credibility;" and (2) "threats against potential witnesses by third parties connected with the defendant are admissible . . . to show [the] defendant's consciousness of guilt." PCRA Ct. Op., 10/7/22, at 6-7. Nevertheless, we may affirm the PCRA court's decision on any basis. *Commonwealth v. Callahan*, 101 A.3d 118, 124 (Pa. Super. 2014).

[11] We would review a trial court's decision, on whether to disqualify a prospective juror for cause, for an abuse of discretion:

> The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence[.] A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of

*(Footnote Continued Next Page)*

at 40, *citing* N.T., 12/3/18, at 50. However, Appellant reasons, Trial Counsel still had seven peremptory challenges remaining, used three of them to remove other jurors, but did not use one to exclude Juror #26. Appellant's Brief at 41. Appellant avers Trial Counsel had no reasonable basis for this conduct, and he (Appellant) suffered prejudice by counsel "squandering [his] right to remove a juror who could not show impartiality." *Id.* We determine no relief is due.

To the extent Appellant suggests Trial Counsel ultimately had remaining preemptory strikes that went unused, we would determine such an insinuation to be misleading. We emphasize Appellant ignores Trial Counsel's testimony, at the PCRA hearing, that he did use the remaining peremptory challenges to strike other jurors, whom he determined were "less desirable" than Juror #26. *See* N.T., 6/3/22, at 11. Counsel referred to his notes, which showed these other jurors had relatives in law enforcement or were a victim of a crime. *Id.* Accordingly, Counsel stated it was not "an oversight" to not strike Juror #26, but rather he opted to strike other jurors as part of "a calculated analysis of the jury pool[.]" *Id.*

---

prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions.

*Commonwealth v. Briggs*, 12 A.3d 291, 333 (Pa. 2011) (citations omitted).

Furthermore, Trial Counsel agreed that Juror #26 "ultimately indicated that they **would** be able to follow the Court's instruction and be a fair and impartial juror[.]" N.T., 6/3/22, at 13-14 (emphasis added). We summarize that at the voir dire proceeding, Trial Counsel initially pointed out eight jurors indicated they would not be able to follow the trial court's instructions. N.T., 12/3/18, at 12. The trial court responded it would "rehabilitate them because that question is confusing." *Id.* at 13. The court then addressed the entire jury pool, giving as examples jury instructions that: a police officer's testimony is not to be given greater or lesser weight simply because of his employment; and the burden of proof was on the Commonwealth to prove guilt beyond a reasonable doubt. *Id.* at 22. The court asked if the jurors understood these, and the transcript indicates there was no negative response. *See id.* at 22-23. In denying Trial Counsel's subsequent motion to strike Juror #26 for cause, the court reasoned, "Those questions are sometimes confusing to individuals, and I believe I properly instructed the jurors as to what the law is and what they must follow, and everybody indicated appropriately." *Id.* at 50.

Based on the foregoing, we reject Appellant's present claim that Trial Counsel lacked any reasonable basis for not using a peremptory challenge against Juror #26. *See* Appellant's Brief at 41. Instead, Trial Counsel explained he had "chose[n] a particular course of conduct that had some reasonable basis designed to effectuate [Appellant's] interests." ***See***

*Charleston*, 94 A.3d at 1019.  As Appellant cannot establish this prong of his ineffectiveness claim, we agree with the PCRA court's denial of relief.

### IX.  Conclusion

After careful review, we determine the PCRA court did not abuse its discretion in denying Appellant's ineffectiveness claims.  Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/01/2023